UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
EVERCARE CHOICE, INC.,

         Plaintiff,   Civil Case No. 7:20-cv-02733-PMH

  -against-

PKF O'CONNOR DAVIES, LLP; O'CONNOR DAVIES,
LLP; O'CONNOR DAVIES MUNNS & DOBBINS, LLP;
and Individuals THOMAS P. KENNEDY; CHRISTOPHER
J. McCARTHY; MICHAEL J. SUAREZ; GARRETT M.
HIGGINS; DOROTHEA RUSSO, AND JOHN DOES 1-10,

         Defendants.
----------------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION
# FOR AN ORDER STAYING OR DISMISSING
# THIS ACTION AND COMPELLING MEDIATION AND ARBITRATION

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
*Attorneys for Defendants*
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

**TABLE OF CONTENTS**

                                                            **Page**

STATEMENT IN REPLY ............................................................................................... 1

ARGUMENT .................................................................................................................. 1

        POINT I        MEDIATION AND ARBITRATION CLAUSES AGREED BETWEEN THE PARTIES ARE ENOFRCEABLE AND ALL CLAIMS MADE BY PLAINITFF FALL WITHIN THEIR SCOPE ................................................................................................ 1

        POINT II       PUBLIC POLICY IS NOT RELEVANT TO THE VALIDITY OF THE ENGAGEMNT LETTERS ................................................................ 3

        POINT III      DEFENDANTS ARE NOT PARTIES TO THE MASTER AGREEMENT AND IT IS NOT BINDING UPON THEM ..................... 7

        POINT IV      MEDATION IS A VALID CONDITION PRECEDENT WHICH HAS NOT BEEN SATISFIED ................................................................ 8

        POINT V       DEFENDANTS MAKE NO ARGUMENT REGARDING THE DETERMINATION OF ARBIRTABILTY ................................................ 9

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abeona Therapeutics, Inc. v. EB Research P'ship,
 No. 18cv10889(DLC), 2019 U.S. Dist. LEXIS 24376 (S.D.N.Y. Feb. 14, 2019) ............. 2, 6, 7

Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp,
 277 F. Supp. 2d 304, 307 (S.D.N.Y. 2003) ................................................................. 6

AT&T Mobility LLC v. Concepcion,
 563 U.S. 333, 131 S. Ct. 1740 (2011)......................................................................... 2

Buckeye Check Cashing, Inc. v. Cardegna,
 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)...................................... 6, 7

Crabtree v. TriStar Automotive Grp., Inc.,
 776 F. Supp. 155 (S.D.N.Y. 1991) .............................................................................. 7

ESI, Inc. v. Coastal Corp.,
 61 F. Supp. 2d 35 (S.D.N.Y. 1999) ............................................................................. 7

Granite Rock Co. v. Int'l Bhd. of Teamsters,
 561 U.S. 287, 130 S. Ct. 2847 (2010)...................................................................... 6, 7

Ill. Power Co. v. Duke Eng'g & Servs.,
 Case No. 99 C 5384, 2002 U.S. Dist. LEXIS 5497 (N.D. Ill. Mar. 29, 2002) ........................ 6

Lloyd v. J.P. Morgan Chase & Co.,
 791 F.3d 265 (2d Cir. 2015) ........................................................................................ 2

Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,
 88 F.3d 129 (2d Cir. 1996) .......................................................................................... 2

Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,
 86 N.Y.2d 685, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995)........................................ 9

Rollins, Inc. v. Heller,
 454 So. 2d 580 (Fla. 3d DCA 1984) ........................................................................... 6

Underwriters at Lloyds v. Fedex Freight Sys.,
 No. 8:07-CV-212-T-EAJ, 2008 U.S. Dist. LEXIS 55823 (M.D. Fla. July 23, 2008) ................ 6

Utica Mut. Ins. Co. v. Clearwater Ins. Co.,
 906 F.3d 12 (2d Cir. 2018) .......................................................................................... 9

Winter Panel Corp. v. Reichhold Chems.,
    823 F. Supp. 963 (D. Mass. 1993) .................................................................................. 6A

**Statutes**

9 U.S.C. § 3 ............................................................................................................................... 1

9 U.S.C. § 4 ............................................................................................................................... 1

FAA § 2 ..................................................................................................................................... 6

**Other Authorities**

Article VII .................................................................................................................................. 8

Article VII(C)(10) ...................................................................................................................... 8

Article VII(C)(10)(g) ................................................................................................................. 8

*Memorandum Of Law In Support Of Defendants' Motion For An Order Staying Or
    Dismissing This Action And Compelling Mediation And Arbitration* at 6 ............................... 10

**Rules**

10 NYC RR 98 .......................................................................................................................... 4

10 NYC RR 98-3 ....................................................................................................................... 4

10 NYC RR 98-3.2(g) ........................................................................................................... 4, 5

10 NYC RR 98-3.6 .................................................................................................................... 4

10 NYC RR 98-3.6(a)(2) ........................................................................................................... 4

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 1

This Reply Memorandum of Law is respectfully submitted on behalf of defendants PKF O'Connor Davies, LLP ("PKFOD"), Thomas P. Kennedy, Christopher J. McCarthy, Michael J. Suarez, Garrett M. Higgins and Dorothea Russo (collectively, "Defendants") in further support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, for an Order staying or dismissing this action and compelling Plaintiff to submit its claims for mediation and arbitration.

## STATEMENT IN REPLY

Plaintiff's creative, and misleading, arguments in an attempt to invalidate the engagement letters between the parties cannot stand. The contracts between the parties are proper under law, and no amount of creative protest or concocted conspiracy theories can overcome what is clearly written on paper: the parties agreed to mediate, and, failing that, to arbitrate any dispute between them.[1] Neither mediation nor arbitration has occurred, and neither was explored prior to the filing of Plaintiff's Complaint with this Court. As such, this action must be stayed or dismissed, and mediation and arbitration compelled.

## ARGUMENT

### POINT I

### MEDIATION AND ARBITRATION CLAUSES AGREED BETWEEN THE PARTIES ARE ENOFRCEABLE AND ALL CLAIMS MADE BY PLAINITFF FALL WITHIN THEIR SCOPE

---

[1] In her December 21, 2020 Declaration in Opposition to Defendants' motion (McTigue Dec.), EverCare's CEO Sylvia McTigue argues that she signed the 2016 PKFOD engagement letter relating to the 2015 audit of EverCare (Manisero Dec. Ex. 4) under duress. Defendants dispute this contention, and are prepared to submit refuting evidence should the Court determine that to be necessary. It must be noted, however, that Ms. McTigue also signed on behalf of EverCare the 2015 engagement letter relating to the 2014 audit of EverCare, which is virtually identical to the 2016 engagement letter. *See* Manisero Dec. Ex 3.

1

This action must be dismissed or stayed as the parties are bound by agreements to mediate and arbitrate their disputes. Plaintiff's argument regarding the scope of the arbitration agreement misses by a wide margin as, once again, Plaintiff appears to have perfected its specialty in selective quotation and citation in order to mislead the Court. The clauses at issue here are clear and are not limited to "three types of disputes" as Plaintiff claims. Instead, they apply to "[a]ny claim or controversy arising out of or relating to this engagement, the services provided thereunder, or any other services provided by or on behalf of the firm or any of its subcontractors or agents to [EverCare] or at its request (including any dispute involving any person or entity for whose benefit the services in question are or were provided) …" *See* Manisero Dec., Exhibits 1, 2, 3 and 4. Putting aside for a moment Plaintiff's failure to submit this matter for mediation or arbitration prior to bringing this action in Federal Court, the language is unambiguous as to the parties' intentions. The "any claim or controversy" language is similar to the "all disputes which may arise under or in connection with" language in Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 133 (2d Cir. 1996), which was considered by the Second Circuit to be broad enough to cover a related dispute. *See also* Abeona Therapeutics, Inc. v. EB Research P'ship, No. 18cv10889(DLC), 2019 U.S. Dist. LEXIS 24376, at *8 (S.D.N.Y. Feb. 14, 2019) (agreement contains a broad arbitration clause which must be enforced). Unambiguous arbitration clauses, such as the clauses at issue here, shall be enforced pursuant to their terms. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740 (2011)(citations omitted). Even ambiguous arbitration clauses benefit from a presumption of arbitrability. Lloyd v. J.P. Morgan Chase & Co., 791 F.3d 265, 269 (2d Cir. 2015).

Indeed, it matters not whether the Court determines that the clauses in question are broad or narrow, as every claim alleged by Plaintiff will fall under the clause. In improperly arguing the

merits of EverCare's case in the instant motion, limited as it was by the Court to the matter of arbitrability, Plaintiff inadvertently supports Defendants' motion to compel mediation and arbitration. Plaintiff argues that "the arbitration provision only applies to claims relating to PKF's engagement to audit EverCare, the audit services provided thereunder, and any other services provided by PKF to EverCare." EverCare then continues by noting that the following activities did not fall within the scope of the engagement: "creating, issuing and disseminating false accounting statements misclassifying financial transactions, and concealing and mischaracterizing related-party transactions…" *See* Plaintiff's Memo in Opp. at 7. This is odd as creating financial statements and journaling transactions are all management functions, and proposing standard, adjusting, or correcting journal entries to EverCare's financial statements as well as auditing financial statements, are integral parts of an audit. All are contracted for in the engagement letters. *See* Manisero Dec., Exhibits 1, 2, 3 and 4. The alleged improprieties, which Defendants unequivocally deny, all stem from services provided by PKFOD to EverCare pursuant to their audit engagement letters. That letters contain enforceable arbitration clauses, and no matter how plaintiff strains to declare those clauses narrow or broad, the clauses are valid and the complained of activities stem from the audits PKFOD performed for EverCare. This requires that pursuant to the agreement between the parties this matter must be mediated, and failing that, arbitrated.

**POINT II**

**PUBLIC POLICY IS NOT RELEVANT TO THE VALIDITY OF THE ENGAGEMNT LETTERS**

Plaintiff would like the Court to believe that somehow the New York State legislature and the Commissioner of Health intended that Defendants' engagement letters all be found invalid. Clearly, the legislature and the Commissioner have many issues on their agendas year over year, and accounting firm engagement letters are rarely, if ever, one of them. Plaintiff leads this Court

3

through a tortured reading of Part 98 of Title 10 of NYCRR and its purported influences, straining along the way to make a public policy argument related to financial service and insurance regulations as well as Sarbanes-Oxley (?!) and auditor Independence only to land on one salient point: that part 98-3 forbids a CPA from entering into an agreement of indemnity or release from liability related to the performance of an audit in accordance with professional standards. This, miraculously for Plaintiff, is actually true.

10 NYC RR 98-3.6(a)(2) reads in full that: "A MCO may utilize a CPA for the purposes specified in this Subpart provided that the CPA… Has not either directly or indirectly entered into an agreement of indemnity or release from liability (collectively referred to as *indemnification*) with respect to the audit of the MCO…" While ensuring auditor Independence is indeed an imperative goal, one which the Defendants take extremely seriously (and is not seriously in dispute here despite Plaintiff's claims), the Court should not be distracted by Plaintiff's arguments in this regard, and should instead focus on a plain reading of the operative regulation.

Section 98-3.6 bars Defendants from contracting with EverCare for indemnity or a release from liability, which Defendants have not done. In this regard, the regulations define "indemnification" to mean "an agreement of indemnity or a release from liability where the intent or effect is to shift or limit in any manner the potential liability of the CPA **for failure to adhere to applicable auditing or professional standards**, whether or not resulting in part from knowing of other misrepresentations made by the MCO or its representatives." 10 NYC RR 98-3.2(g). The indemnification language contained in the engagement letters and quoted by Plaintiff does not violate the regulations, as it does not relieve the auditors from liability for "failure to adhere to applicable auditing or professional standards." Id.

4

The indemnification language in the engagement letters pertains in the first instance to third-party claims against the auditors "as a direct or indirect result of an intentional, knowing or reckless misrepresentation or provision to [the auditors] of inaccurate or incomplete information by [EverCare] or any director, officer or employee thereof **and not any failure on our part to comply with professional standards**, you agree to indemnify us against such obligations." *See* Manisero Dec., Exhibits 1, 2, 3 and 4. (Emphasis added). In other words, this indemnification applies when the auditors get sued by third-parties because the client lied to or deceived them. This indemnification clause is not prohibited by 10 NYC RR 98-3.2(g).

The second indemnification clause also does not pertain to a failure on the part of the auditors to adhere to auditing or professional standards. This clause applies, "**to the fullest extent permitted by law**," when the auditors incur expenses responding to subpoenas or requests for testimony, documents or information concerning Plaintiff "in any litigation or dispute **other than litigation or disputes involving claims by [EverCare] against the firm**." *See* Manisero Dec., Exhibits 1, 2, 3 and 4. (Emphasis added.)

Neither of these clauses involve the auditors trying to excuse themselves from compliance with their professional standards in the performance of their services, which is what is prohibited by the regulations. They are instead reasonable and permissible mechanisms to protect the auditors from liabilities they might incur through no fault of their own.

Plaintiff also argues that the parties' agreement that the auditors' "maximum liability to [EverCare] for any reason relating to the services under this letter shall be limited to three times the fees paid to the firm for the services or work product giving rise to the liability…" (*see* Manisero Dec., Exhibits 1, 2, 3 and 4) also is prohibited by the regulations. However, a plain reading of the contractual language compels the conclusion that this clause is not a release from

5

liability, but rather a limit on damages, which is not prohibited by the regulations and should not be construed as such. Courts in this district have recognized this distinction. Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp., 277 F. Supp. 2d 304, 307 (S.D.N.Y. 2003). Courts across the country also differentiate the two types of clauses. *See* Ill. Power Co. v. Duke Eng'g & Servs., Case No. 99 C 5384, 2002 U.S. Dist. LEXIS 5497, at \*7 (N.D. Ill. Mar. 29, 2002)("a hold-harmless agreement is equivalent to an exculpatory clause and completely insulates a party from liability...whereas a limitation-of-damages provision merely caps a party's liability at an agreed level."); *see also* Rollins, Inc. v. Heller, 454 So. 2d 580, 583-84 (Fla. 3d DCA 1984) (distinguishing between an exculpatory clause and a limitation of damages provision in a contract that contained both); Underwriters at Lloyds v. Fedex Freight Sys., No. 8:07-CV-212-T-EAJ, 2008 U.S. Dist. LEXIS 55823, at \*20-21 (M.D. Fla. July 23, 2008) (limitation on amount of liability was not an unenforceable exculpatory clause); Winter Panel Corp. v. Reichhold Chems., 823 F. Supp. 963, 973 (D. Mass. 1993) (damages limitation clause is not unconscionable, as it is a reasonable allocation of risk between two commercial entities.).

Lastly, even if the Court finds that these clauses are impermissible, the proper remedy when a portion of a contract with an arbitration clause is not permitted by law is not to invalidate the entire contract, but rather to sever the arbitration clause from the contract and enforce the arbitration clause. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298-299, 130 S. Ct. 2847 (2010). When a party challenges the contract as a whole on the grounds that one of the contract's provisions renders the contract invalid, this challenge must go to an arbitrator for consideration. Abeona Therapeutics, Inc. v. EB Research P'ship, No. 18cv10889 (DLC), 2019 U.S. Dist. LEXIS 24376 (S.D.N.Y. Feb. 14, 2019) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). The validity of the

6

contract in which the arbitration clause is contained is not controlling as under the FAA § 2 the arbitration clause is "valid, irrevocable, and enforceable" without mentioning the contract in which it appears. Id. As such, as a matter of federal arbitration law, the arbitration provision is severable from the remainder of the contract. Id. Courts are compelled to treat the arbitration clause as severable from its contract. Id. (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298-299, 130 S. Ct. 2847 (2010)). Here, even if the Court would like to find that the indemnification clauses are improper, it is obligated to sever the arbitration clause from the engagement letter and enforce that clause. The determination of the validity of the contract must go to the arbitrator. Abeona Therapeutics, Inc., *supra* at 6.

## POINT III

**DEFENDANTS ARE NOT PARTIES TO THE MASTER AGREEMENT AND IT IS NOT BINDING UPON THEM**

Plaintiff's argument that the engagement letters violate EverCare's Master Services agreement with New York State is spurious. Had Plaintiff bothered to read the entire 178 page "Master Agreement" which it offers as Exhibit B to the McTigue Declaration, it would know that none of the Defendants are parties to the agreement between New York State and EverCare, and that the terms of the agreement they cite apply to providers of medical and health-related services, not accounting services. As such, the terms of that agreement are not binding upon Defendants, and EverCare may not use the terms of an outside agreement to invalidate the terms of the engagement letters between the parties. Crabtree v. TriStar Automotive Grp., Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991) (a non-signatory to a contract cannot be named defendants in a breach of contract action unless it assumed, or was assigned, the contract); ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 73 (S.D.N.Y. 1999)( "[A] non-signatory to a contract can be named as a defendant in a breach of contract action only if the party is in privity with the plaintiff or has assumed the

7

obligations of the contract."). Defendants are not in privity with New York State, and have not assumed any of the obligations contained in the Master Agreement. As such, Defendants are not bound but its terms.

Even assuming the Defendants were bound by the Master Agreement, Plaintiff's argument still fails. Article VII of the Master Agreement deals with EverCare's relationship with "Providers." The language of the agreement clearly contemplates "Providers" to mean medical providers, and EverCare selectively omits the operative language from its quote of Article VII(C)(10)(g) which states this. Specifically, Article VII(C)(10) sets requirements for EverCare's "contracts with providers of **covered services** …" This dissembling is meaningful as Defendants are not "Providers of Covered Services" as stated under the Master Agreement. The definition of covered services under the Master agreement reads: "Covered service shall mean those **medical and health-related services** identified in Appendix G which enrollees are entitled to receive pursuant to Article V.A. They are also known as the Benefit Package or Benefit Package Services." (McTigue Declaration, Ex. B at 140)(Emphasis added). Defendants provided audit services to EverCare, not medical or health related services to EverCare's enrollees. Therefore, Plaintiff's sloppy citation and misleading arguments notwithstanding, the Master Agreement does not apply to the engagement letters between EverCare and Defendants.

## POINT IV

**MEDATION IS A VALID CONDITION PRECEDENT WHICH HAS NOT BEEN SATISFIED**

Plaintiff, in its opposition papers, attempts to trick the Court into believing that it is without fault for bringing this scandalous action before this Court without complying with the plain language terms contained in the engagement letters between the parties. As EverCare correctly points out, Defendants' contention is that mediation is a condition precedent to arbitration under

the contract, and that mediation has not taken place. While there has been correspondence between the parties in this regard, those communications only occurred many months after Plaintiff brought this action in federal court, in clear violation of the engagement letters. Inquiring into moving forward with an event, as Plaintiff has done here, does not mean that the event has occurred. As previously stated, under New York law, "[a] condition precedent is 'an **act or event**, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" Utica Mut. Ins. Co. v. Clearwater Ins. Co., 906 F.3d 12, 22 (2d Cir. 2018) (quoting Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995)) (emphasis added). The "act or event" in question here is holding a mediation, not, as plaintiff claims, making inquiries into holding a mediation. It is not in dispute that a mediation has not been held. This is a condition precedent to arbitration under the engagement letter, and as such the instant matter should be dismissed for a determination regarding the failure of Plaintiff to satisfy the condition precedent to arbitration.

## POINT V

### DEFENDANTS MAKE NO ARGUMENT REGARDING THE DETERMINATION OF ARBIRTABILTY

EverCare is so desperate to keep this action before this Court that it has purposefully misread and misrepresented Defendants' argument on this point. Defendants have made no argument regarding who must determine the arbitrability of the claim; in fact, the existence of this very motion before the Court requires that we agree with EverCare in their assertion that the question of arbitrability is an issue for judicial determination. What is not an issue for judicial determination, however, is the failure of a condition precedent to arbitration, as clearly stated on page 6 of Defendants' initial memorandum of law. There is ample case law cited therein in support

9

of that proposition. *See Memorandum Of Law In Support Of Defendants' Motion For An Order Staying Or Dismissing This Action And Compelling Mediation And Arbitration* at 6.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to stay or dismiss this action, to compel EverCare to submit its claims for mediation and arbitration, and to award Defendants such further and different relief as the Court deems just and proper.

Dated: White Plains, New York
December 31, 2020

                              Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

                              By: _/s/ Thomas R. Manisero_
                              Thomas R. Manisero
                              Bradley M. Pryba
                              1133 Westchester Avenue
                              White Plains, New York 10604
                              (914) 872-7847
                              Thomas.Manisero@wilsonelser.com
                              Bradley.Pryba@wilsonelser.com
                              *Counsel to Defendants PKF O'Connor Davies, LLP; O'Connor Davies, LLP; O'Connor Davies Munns & Dobbins, LLP; Thomas P. Kennedy; Christopher J. McCarthy; Michael J. Suarez; Garrett M. Higgins; Dorothea Russo*

CC: Peter B. Zlotnick, Esq.
      Ted A. Berkowitz, Esq.
      Steven Ginsberg, Esq.
      Alexander Litt, Esq.
      *Attorneys for Plaintiff,*
      *EverCare Choice, Inc.*
      1407 Broadway, 39th Floor
      New York, New York 10018
      Tel.: (212) 239-2000

8585839v.2