

**Peter B. Zlotnick**
Partner
Direct Dial: (212) 239-7275
Email: pzlotnick@moritthock.com

April 19, 2024

**VIA ECF**
The Honorable Philip M. Halpern
United States District Judge
The Hon. Charles L. Brieant Jr. Building
300 Quarropas St.
White Plains, NY 10601-4150

Re: *Evercare Choice, Inc. v. PKF O'Connor Davies LLP et al.*, 7:20-cv-02733 – PMH (S.D.N.Y) (the "Action")

Dear Judge Halpern:

This firm represents Plaintiff EverCare Choice, Inc. ("EverCare") in this Action. We write in response to Defendants' April 12, 2024, pre-motion letter to dismiss EverCare's Third Amended Complaint ("TAC") (Dkt. No. 44). Contrary to Defendants' assertions, the TAC pleads, in painstaking detail, a decades-long RICO conspiracy engineered by EverCare's former parent company, together with certain of its former directors, officers and affiliates ("Elant Group") and the PKF Defendants to defraud EverCare and the New York State out of more than $25 million.[1]

**A. Plaintiff's Claims Are Timely.** Defendants cannot avail themselves of the one-year contractual limitations period from the Engagement Letters for two reasons: (1) the Engagement Letters are void *in toto* as against public policy; and (2) the RICO Schemes, do not arise out of the Engagement Letters; they arise from an independent conspiracy between PKF and the Elant Group. *See* Dkt. No. 44-18 at 9-18.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the TAC.
2313238v1

---

Hon. Phillip M. Halpern, USDJ
April 19, 2024
Page 2

First, Judge Scheindlin held that, *inter alia,* the entire 2016 Engagement Letter, including its one-year statute of limitations provision, is void as against public policy. Dkt. No. 44-18 at 12-18. Judge Scheindlin's reasoning equally applies to the 2014 and 2015 Engagement Letters. Judge Scheindlin held that any limitation of a CPA's liability violates New York's public policy. This is based, in part, on the State's implementation of 10 NYCRR §§ 98.3 *et seq.* ("Part 98"). The Part 98 regulatory framework, modeled after the Sarbanes-Oxley Act of 2002, reflects the public policy to ensure independence between Managed Care Organizations and their auditors by prohibiting engagement agreements that protect auditors who fail to adhere to GAAS and GAAP. Part 98 is similarly based on the National Association of Insurance Commissioners' model audit rule ("NAIC Model Rule"). Both Sarbanes-Oxley and the NAIC Model Rule predate the relevant Engagement Letters. Because the 2014 and 2015 Engagement Letters contain virtually identical limitations of liability clauses as the 2016 Engagement Letter, they too violate the principles underlying Sarbanes and the NAIC Model Rule and, on public policy grounds, are void and unenforceable too. *See, e.g.*, *Walters v. Fullwood*, 675 F. Supp. 155, 161 (SDNY 1987). And, because the Engagement Letters contain no severance provisions, each is an entire, non-severable agreement rendering them all void *in toto*. Dkt. No. 44-18 at 22-24.

Second, Judge Scheindlin specifically found "work done on behalf of any other entity and not at EverCare's request is not covered by the Dispute Resolution clause in the February 2016 Engagement letter." Dkt. No. 44-18 at 8. Judge Scheindlin's decision made clear that several allegations fall into this category and are thus not covered by the Engagement Letters. *Id*. at 8-9. At the very least, triable issues exist that require discovery and the denial of any motion to dismiss.

Plaintiff's claims are also timely under the RICO Act. In *Rotella v. Wood*, the Supreme Court held that the four-year civil RICO limitations period accrues when the plaintiff knows "that

3554995v1

he has been hurt **and who has inflicted the injury**." 528 U.S. 549, 556, (2000) (emphasis added). EverCare had no reason to suspect that its auditors were conspiring with Elant to defraud it out of tens of millions of dollars. Evidence will show that, at the earliest, it was not until Elant's production of documents to EverCare in 2017 during their prior litigation that EverCare had any reason to suspect Defendants' involvement in the fraud. *Sky Med. Supply Inc. v. SCS Support Claims Services, Inc.,* 17 F.Supp.3d 207, 222 (EDNY 2014) (statute of limitations is a fact sensitive issue). EverCare also is entitled to equitable tolling based on Defendants' fraudulent concealment of its actions. *Rotella,* at 561. Defendants' fraudulent concealment lasted at least through the conclusion of their engagement with EverCare in or about May 2016. TAC ¶¶ 43-44. Courts also apply the "separate accrual" rule for civil RICO claims. Under that rule new claims accrue, and its four-year limitations period begins to run anew each time the plaintiff discovered or should have discovered new injuries caused by predicate RICO violations. *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995). Applying the "separate accrual" rule, the TAC alleges that EverCare presently continues to suffer and discover new damages from the RICO Schemes as a result of Defendants' predicate acts and practices. *See, e.g.,* TAC ¶ 302. Thus, the statute of limitations did not and has not run on any damages stemming from the parties' final engagement, and, respectfully, at a minimum, fact discovery should be permitted as to when the applicable limitations period began to accrue.[2]

Plaintiff's common law claims are also timely and validly pled. *See Lavin v. Kaufman, Greenhut, Lebowitz & Forman,* 226 A.D.2d 107, 640 N.Y.S.2d 57 (1st Dept. 1997). Defendants mischaracterize EverCare's common law claims as malpractice or negligence claims. Defendants,

---

[2] Because Plaintiff has pled with particularity each of the elements of the RICO claims, including listing Defendants' numerous predicate acts, the Court may exercise supplemental jurisdiction over the rest of the claims.

however, ignore the litany of *intentional fraudulent and corrupt acts and practices* that the TAC alleges they committed throughout the relevant period, constituting mail and wire fraud, money-laundering and bank fraud, much less breaches of common law duties.  TAC ¶¶ 311, 314, 355-356, 361; *see Wimbledon Fin. Master Fund, Ltd. v. Hallac*, 192 A.D.3d 617, 146 N.Y.S.3d 18 (2021).  The TAC also alleges that the PKF Defendants, together with members of the Elant Group, committed intentional acts of deception and concealment for more than a decade and a half in furtherance of a far-flung criminal conspiracy, including intentionally doctoring cost reports, patient records and financial statements for the purpose of circumventing federal and state Medicaid rules and regulations.[3]  This is most certainly not a case of "garden variety" accounting malpractice; it is a case of unmitigated accounting fraud, concealment, and money-laundering, rendering the three year professional malpractice limitation wholly inapplicable.[4]

**B. Plaintiff Has Pled Its Claims With Sufficient Particularity.**  Defendants argue that Plaintiff's allegations are merely conclusory, but they provide no specific citations as to the allegations in the TAC to which they are referring.  The TAC meets all of its requisite particularity standards.  A complaint against an accountant should not be dismissed for lack of particularity if the complaint contains some rational basis for inferring that the alleged misrepresentation was knowingly made.  *Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92 (1st Dept. 2003).

---

[3] The TAC sets out, in great detail, meetings and communications demonstrating how the conspirators accomplished their purpose in part by using non-negotiable form adhesion contracts such as the Engagement Letters to shield the PKF members of the RICO enterprise from civil and potential criminal prosecution while also enriching the conspirators individually to the detriment of EverCare, and its highly vulnerable elderly and chronically-ill Members. The TAC further alleges with specificity how the federal and State governmental agencies that administer Nee York's Medicaid program were harmed by the numerous false records PKF Defendants intentionally filed in the name of EverCare and the Elant Entities, many of which affected interstate commerce.  Indeed, the TAC asserts with specificity how EverCare and the other injured parties each relied to his, her or its detriment on PKF's untruthful representations—in writing—that it was qualified to serve as an "independent" CPA firm on behalf of EverCare when in fact that was never the case because at all times those representations were false.  Dkt. No. 44-18 at 17-18.

[4] To prevent Defendants from obfuscating the facts and recognizing the true nature of this case based on civil RICO, fraud, and breach of fiduciary duty, EverCare will stipulate to withdraw its breach of contract claims.

Courts merely require "that a claim of fraud be pleaded in sufficient detail to give adequate notice." *Houbigant, Inc.,* at 72. The TAC unquestionably provides each Defendant with more than sufficient notice of their knowing misrepresentations and omissions of material fact. *See, e.g.*, TAC ¶¶ 372-431. And, contrary to Defendants' assertion, *Reves* "provides no blanket immunity for professionals regardless of their involvement in a criminal enterprise" where, as here, it is alleged that they have "exceeded the mere rendering of legitimate professional services, the 'operation or management' requirement [is] pleaded adequately." *JSC Foreign Econ. Ass'n Tech. v. Weiss*, 2007 WL 1159637, *8 (SDNY 2007). Nor is *Reves* dispositive of Plaintiff's claims that Defendants conspired with senior leaders from Elant in violation of § 1962(d). *See Palatkevich v. Choupak,* 2014 WL 1509236, at *22 (SDNY Jan. 24, 2014). The TAC meets § 1962(d)'s relaxed pleading requirements because the TAC "supports a plausible inference that the other Defendants were aware of the overall scheme and understood that they were taking actions in furtherance of that scheme." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 155 (SDNY 2014).

Defendants' Town of Ramapo scheme should not be stricken. It is relevant to this Action, showing a pattern of Defendants' actions. Also, the TAC's allegations concerning Ramapo come directly from public sources. *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp.2d 458 (SDNY 2012).[5]

Respectfully,

/s/ *Peter B. Zlotnick*
Peter B. Zlotnick

---

[5] Similar allegations were made by other former PKF clients too. *See* https://www.prnewswire.com/news-releases/saexploration-files-lawsuit-against-former-auditor-pkf-texas-for-egregious-negligence-301723974.html

3554995v1