UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVERCARE CHOICE INC.,

               Plaintiff,

        -against-

PKF O'CONNOR DAVIES, LLP; O'CONNOR
DAVIES, LLP, O'CONNOR DAVIES MUNNS
& DOBBINS, LLP; and Individuals THOMAS
P. KENNEDY; CHRISTOPHER J.
McCARTHY; MICHAEL J. SUAREZ;
GARRETT M. HIGGINS; DOROTHEA
RUSSO, AND JOHN DOES 1-10,

               Defendants.

**OPINION AND ORDER**

20-CV-02733 (PMH)

PHILIP M. HALPERN, United States District Judge:

On January 5, 2021, the Court issued an order granting a motion to compel arbitration in this action, staying all deadlines pending mediation and arbitration, and permitting the parties to move to reopen the case within thirty days of the conclusion of the arbitration proceedings. (Doc. 31). On February 1, 2024, Evercare Choice Inc. ("Plaintiff") moved by letter to reopen the case (Doc. 34), which application the Court granted (Doc. 38). On April 4, 2024, Plaintiff filed a Third Amended Complaint. (Doc. 44).

Pending before the Court are three fully briefed motions: (1) Plaintiff's motion to confirm an arbitration award (Doc. 48); (2) Defendants' motion to dismiss the Third Amended Complaint (Doc. 67); and (3) Defendants' motion to strike paragraphs 242-256 of the Third Amended Complaint along with exhibits 9 and 10 (Doc. 65).

For the reasons set forth below, the motion to confirm the arbitration award is denied as moot, the motion to dismiss is granted, and the motion to strike is denied as moot.

**BACKGROUND**

Plaintiff commenced this action on April 1, 2020 against PKF O'Connor Davies, LLP ("PKF"), O'Connor Davies, LLP, O'Connor Davies Munns & Dobbins, LLP (collectively, the "PKF Entities"); Thomas P. Kennedy, Christopher J. McCarthy, Michael J. Suarez, and Garrett M. Higgins (collectively the "Individual Auditor Defendants," and together with the PKF Entities, "Defendants"). (Doc. 1; Doc. 5). Plaintiff filed an Amended Complaint on July 10, 2020, and a Second Amended Complaint on October 8, 2020. (Doc. 12; Doc. 17). Defendants moved to compel arbitration and the Court, on January 5, 2021, held oral argument and granted the motion. (Docs. 24-31). The Court's bench ruling granting the motion to compel arbitration was without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings. (Doc. 31). Plaintiff advised that the parties had proceeded to mediation and, when the mediation was unsuccessful, to arbitration through the American Arbitration Association ("AAA") before the Honorable Judge Shira A. Scheindlin (ret.). (Doc. 34). Plaintiff further advised that on November 20, 2023, Judge Scheindlin issued an order granting Plaintiff's motion to remand this action to this Court (the "Arbitration Order"). (Doc. 34; Doc. 50-1). The Court, over Defendants' objection, reopened this case at Plaintiff's request on February 12, 2024. (Doc. 38).

Defendants consented to Plaintiff filing a Third Amended Complaint (Doc. 40; Doc. 41), which Plaintiff ultimately filed on April 4, 2024. (Doc. 44, "TAC"). The gist of this 91-page, 431-paragraph pleading (exclusive of 18 exhibits) is that Defendants, together with members of Plaintiff's former parent company, Elant Group ("Elant"), committed intentional acts of deception and concealment for more than 15 years in furtherance of a far-flung criminal conspiracy,

2

including intentionally doctoring cost reports, patient records and financial statements for the purpose of circumventing federal and state Medicaid rules and regulations.

Plaintiff is a not-for-profit corporation that manages a long-term care plan, providing health care services to Medicaid recipients in Orange, Rockland, and Dutchess counties. (*Id.* ¶ 8). Plaintiff is required to report to state regulators, including the New York State Department of Health ("DOH"), through State Cost Reports, the services rendered to its Members by contracted service providers. (*Id.* ¶¶ 21-25).

Defendants were Elant's auditors, rendering services to it, as well as the entities over which it and its principals—Todd Whitney, Donna Cornell and Debra M. Zambito (collectively, the "Elant Leaders")—had control, such as the Elant SNFs[1] and Plaintiff. (*Id.* ¶¶ 35-44). Elant and the Elant Leaders became subject to a Medicaid enforcement investigation. (*Id.* ¶¶ 46-52). The State was conducting a criminal investigation into Elant's Medicaid fraud, of which Defendants knew but concealed by burying the facts of the investigation and Medicaid fraud in a footnote of Elant's audited financial statements for 2013 and 2014. (*Id.* ¶¶ 53-62, 72). On or about December 9, 2015, the State and Elant Entities entered into a Settlement Agreement regarding the investigation. (*Id.* ¶¶ 63-72). Plaintiff alleges that Defendants provided active, contemporaneous strategic and financial advice and concealed the Elant Leaders' massive Medicaid fraud by grossly mischaracterizing it as merely an "inquiry" despite having first-hand and personal knowledge of the investigation and the Medicaid fraud being perpetrated by the Elant Leaders. (*Id.* ¶ 72).

Plaintiff alleges that beginning in 2010, Defendants helped the Elant Leaders procure and maintain eligibility with a mortgage insured by the Federal Housing Authority by preparing false

---

[1] Although "SNFs" is not a defined term in the TAC, the Court understands the acronym to mean "Skilled Nursing Facilities."

and misleading financial statements (the "FHA Mortgage Scheme"). (*Id.* ¶¶ 73-79). These financial statements mischaracterized certain transfers of cash between Elant, the Elant Entities, and Plaintiff, depicted certain transferred expenses and loans as obligations of Plaintiff when they were not, and characterized "non-current" assets as "current" assets despite knowing that Elant never intended to repay the transfers to Plaintiff. (*Id.*).

With respect to these transfers, Plaintiff alleges that the Elant Leaders, with Defendants' knowledge and assistance, diverted Plaintiff's resources to Elant and the Elant SNFs to prop up their financial condition and ensure their continued eligibility for the FHA Mortgage. (*Id.* ¶¶ 80-143). The diversion of resources included inter-company transfers of cash, which Defendants knew created significant accounting issues, and meaningfully participated and presented at Elant's Finance Committee meetings concerning same. (*See, e.g., id.* ¶¶ 86-89, 96).

Elant, in 2012, caused Plaintiff to enter into above-market sham lease transactions with Elant At Fishkill, Inc. ("Fishkill") (*see id.* at 2 n.2), incurring a fictitious expense on Plaintiff's books while "prop[ping] up Fishkill's deteriorating finances." (*Id.* ¶¶ 144-147). Defendants knew that Plaintiff was paying for a sham lease at an over-market value and despite this knowledge, failed to report it in the audit causing false or misleading State Costs Reports to be filed on Plaintiff's behalf. (*Id.* ¶¶ 148-150).

Whitney, with Cornell and Defendants, put into place the necessary pieces to spin off Plaintiff from the Elant Entities prior to the conclusion of the State investigation so that he would have an alternative source of employment if Elant were to collapse. (*Id.* ¶¶ 151-153). This began in March 2014, while the Elant Leaders were also arranging for the below-market sale of Elant SNFs to an investor group for $10 million. (*Id.* ¶¶ 151-154). The Elant Leaders worked to convince the Board that there was no choice but to accept that $10 million offer, concealing the fact the

Elant SNFs were going to receive approximately $18.5 million in settlement proceeds as their portion of the so-called "Universal Settlement" (an $850 million global settlement involving claims brought by approximately 900 SNFs in New York, including the Elant SNFs, against DOH). (*Id.* ¶¶ 166-174). Defendants were the architects of the Universal Settlement but "concealed its existence until it was too late." (*Id.* ¶ 175). Defendants, in December 2014, revealed to Sylvia McTigue, Plaintiff's President and CEO, "significant concerns regarding the nursing home sale, the omission of having conducted a valuation, the sale of the individual entities for $1, missing assets and liabilities schedules, the incompetence of Elant leadership in negotiating the transaction and sales documents, and the omission of consideration regarding the proceeds of the Universal Settlement." (*Id.* ¶ 176; *id.* ¶¶ 213-234).

Plaintiff also alleges concealment and abuse of Foundation and "Community Relation" funds by the Elant Leaders and Defendants, alleging that Defendants knew or reasonably should have known about the Elant Leaders' defalcation of these restricted funds yet such information does not appear in any audited financial statement. (*Id.* ¶¶ 182-191). Elant, through the Elant Leaders and Defendants, also deliberately failed to institute the operational, IT staffing, financial controls, and systems changes that were essential to bring Plaintiff into the bare minimum level of compliance needed to satisfy its applicable regulatory obligations. (*Id.* ¶¶ 257-284). The foregoing caused Plaintiff to receive a series of Net Worth Deficiency ("SOD"), incurred as a result of materially flawed and deficient financial statements and reports. (*Id.* ¶¶ 285-302).

Elant's fraud was the subject of a separate state court action commenced by Plaintiff in 2016 which resulted in an $18.5 million Order of Attachment and subsequent settlement, pursuant to which the Elant Entities agreed to, *inter alia*, pay Plaintiff approximately $14,000,000.00. (*Id.* ¶ 5).

5

Plaintiff now seeks damages against Defendants for their role in the schemes and asserts the following claims for relief: (1) common law fraud; (2) aiding and abetting Elant's fraud; (3) breach of fiduciary duty; (4) aiding and abetting Elant's breach of fiduciary duty; (6) 18 U.S.C. § 1962(d), conspiracy to violate the Racketeering Influence and Corrupt Organizations Act ("RICO"); and (7) 18 U.S.C. § 1962(c), RICO violation.[2]

**STANDARD OF REVIEW**

I.    Motion to Confirm Arbitration Award

Under Section 9 of the FAA, "within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9. District courts generally treat a "petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).[3]

The Second Circuit has repeatedly recognized that courts owe "strong deference . . . [to] arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *New York City Dist. Council of Carpenters v. WJL Equities Corp.*, No. 15-CV-04560, 2015 WL 7571835, at *2 (S.D.N.Y. Nov. 24, 2015). The Court's review of an arbitration award is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters*

---

[2] The Fifth Claim for Relief alleging breach of contract was deemed withdrawn by Order and Stipulation. (Doc. 52).

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

*& Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015). "Confirmation of an arbitration award is thus generally 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]'" *IBEW Loc. Union 320, AFL-CIO v. Roseton Generating LLC*, No. 22-CV-03457, 2022 WL 17175800, at \*3 (S.D.N.Y. Nov. 23, 2022) (quoting *D.H. Blair & Co.*, 462 F.3d at 110). "The Court's task is not to reconsider the merits of the dispute . . . [but rather] is simply to ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of [her] authority and did not ignore the plain language of the contract." *Id.* (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)).

II.   Motion to Dismiss – Rule 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences

are drawn and viewed in a light most favorable to the plaintiff[].” *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, “‘is inapplicable to legal conclusions,’ and ‘[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.’” *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide “more than labels and conclusions” to show entitlement to relief. *Twombly*, 550 U.S. at 555.

III.    Motion to Strike – Rule 12(f)

Rule 12(f) provides, in relevant part, that “[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.” Fed. R. Civ. P. 12(f). “Federal courts have discretion in deciding whether to grant motions to strike.” *Crosby v. Stew Leonard’s Yonkers LLC*, 695 F. Supp. 3d 551, 558 (S.D.N.Y. 2023) (quoting *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019)). “However, motions to strike under Rule 12(f) are generally ‘disfavored and granted only if there is strong reason to do so.’” *Id.* (quoting *Sweigert v. Goodman*, 18-CV-08653, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021)).

## ANALYSIS

I.    Arbitration Order

Plaintiff seeks confirmation of the Arbitration Order pursuant to 9 U.S.C. § 9. (Doc. 48). Defendants question the Court’s subject matter jurisdiction and alternatively argue that the motion should be denied as moot. (*See* Doc. 53).

With respect to subject matter jurisdiction, Plaintiff filed this action asserting claims under federal law. (*See* Doc. 1; Doc. 5). Because of the federal questions presented, the Court had subject matter jurisdiction when the case was commenced, and when it stayed the action pending arbitration and retained jurisdiction to confirm the resulting award. *Jules v. Andre Balazs Props.*,

No. 20-CV-10500, 2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023), *aff'd*, No. 23-1253, 2025 WL 1201914 (2d Cir. Apr. 25, 2025), *cert. granted sub nom. Jules v. Andre Balazs Prop.*, No. 25-83, 2025 WL 3493153 (U.S. Dec. 5, 2025). Defendants, citing *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), argue that the Court may not consider the underlying claims in the action when considering its subject matter jurisdiction in connection with a motion to compel arbitration. But "that case concerned jurisdiction over an action originally filed to confirm an arbitral award, rather than one filed to assert federal causes of action and stayed pending arbitration." *Jules*, 2023 WL 5935626, at *2.

Defendants separately argue that because the relief awarded in the Arbitration Order has been fully satisfied—*i.e.*, the case was remanded to this Court and the case is now being litigated in this Court—Plaintiff's motion has been rendered moot. The Second Circuit case, *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67 (2d Cir. 2023), addressed a situation similar to the case at bar. The petitioner in *Stafford* filed a petition under the FAA to confirm a monetary arbitration award, which the respondent paid shortly thereafter. *Id.* at 65. The Second Circuit determined that the request to confirm the arbitration award became moot when the respondent paid the award in full. *Id.* at 69.

"Confirmation is a 'mechanism[] for enforcing arbitration awards.'" *Id.* at 67 (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). "A party, successful in arbitration, seeks confirmation by a court generally because he fears the losing party will not abide by the award." *Id.* (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2nd Cir. 1984)). "An arbitration award, however, 'need not actually be confirmed by a court to be valid.'" *Id.* at 68 (quoting *Florasynth*, 750 F.2d at 176). Where, like here, the relief awarded has been satisfied and there is

no "issue over payment or ongoing compliance with a prospective award," the petition to confirm is rendered moot. *Id.*

There is no dispute that following the Arbitration Order, this Court lifted the stay, reopened this action, permitted Plaintiff to file the Third Amended Complaint on consent of Defendants, held a pre-motion conference, granted leave to Defendants to move to dismiss and strike and set a briefing schedule therefor, and is now adjudicating the parties' motions. Thus, it is clear that the relief awarded in the Arbitration Order, that "[Plaintiff's] motion to remand this Arbitration to the United States District Court is granted," (Doc. 50-1 at 26) has been fully satisfied.

Plaintiff counters that confirmation is necessary to give effect to the findings of fact and conclusions of law set forth in the Arbitration Order. Plaintiff's argument concerning the preclusive effect of the Arbitration Order's findings does not, however, address the issue of mootness and fails to distinguish this fact pattern from that addressed in *Stafford*. While the arbitrator did analyze myriad arguments raised by the parties in connection with Plaintiff's motion to remand, the only relief awarded by the Arbitration Order was granting the motion to remand. In other words, the findings of the arbitrator were for the purpose of deciding Plaintiff's motion to remand, not to grant any further and additional relief that would have the effect of assigning ongoing legal rights and responsibilities that might otherwise give rise to an issue of "ongoing compliance with a prospective award." *Stafford*, 79 F.4th at 68; *see also Billie v. Coverall N. Am., Inc.*, No. 23-672-CV, 2024 WL 4380618, at *3 (2d Cir. Oct. 3, 2024).

Accordingly, Plaintiff's motion to confirm the Arbitration Order is denied as moot.

10

II.    Motion to Dismiss

Defendants move to dismiss the civil RICO claims alleged in the Third Amended Complaint on statute of limitations grounds and also argue they are insufficiently pled. They request that the Court decline supplemental jurisdiction over the remaining state law claims or, alternatively, dismiss them as insufficiently pled and untimely.[4]

A. Federal Claims for Relief

The two federal claims for relief alleged in the Third Amended Complaint are the Sixth and Seventh Claims for Relief alleging violations of and conspiracy to violate RICO under 18 U.S.C. § 1962(c) and (d).

1. Statute of Limitations

Defendants first argue that the statute of limitations has run on Plaintiff's RICO claims. Although a statute of limitations defense is ordinarily asserted as an affirmative defense in an answer, the Second Circuit permits such defense to be raised on a Rule 12(b)(6) motion provided "the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Holliday v. C.O. Artist*, No. 23-CV-02410, 2024 WL 2882938, at *3 (S.D.N.Y. June 7, 2024) (granting a motion to dismiss under Rule 12(b)(6) and dismissing claims as time-barred). "The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (citing *Rotella v. Wood*, 528 U.S. 549, 552 (2000)).[5] Courts apply a "discovery accrual rule" to RICO claims such that "the limitations period begins to run 'when the plaintiff discovers or should have discovered the RICO injury.'" *Id.* (quoting *In re*

---

[4] Defendants appear to reverse course in reply, requesting only that the Court retain supplemental jurisdiction and dismiss the state law claims. (Doc. 73 at 9).

[5] Defendants, in addition to their argument concerning the four-year limitations period, also make an argument for dismissal under the one-year limitations period in the parties' engagement letters. In light of the Court's rulings herein, it need not and does not reach the merits of this argument.

*Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)). "In other words, 'the limitations period does not begin to run until the plaintiff has actual or inquiry notice of the injury.'" *Id.* (quoting *In re Merrill Lynch*, 154 F.3d at 60).

"A duty to inquire is triggered by information that relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants," although the information "need not detail every aspect of the subsequently alleged fraudulent scheme." *Jobar Holding Corp. v. Halio*, No. 23-CV-11217, 2024 WL 4349749, at *4 (S.D.N.Y. Sept. 30, 2024) (quoting *Cohen*, 711 F.3d at 361), *aff'd*, No. 24-2879-CV, 2025 WL 1512574 (2d Cir. May 28, 2025). The duty is triggered by "storm warnings" that should prompt an inquiry, and "such storm warnings are sufficient where, a person of ordinary intelligence would consider it 'probable' that fraud had occurred." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012). If a RICO plaintiff makes no inquiry once the duty arises from the storm warnings, knowledge is imputed as of the date the duty arose; and the claim then is time-barred when the plaintiff makes no inquiry within the limitations period. *Id.* at 153.

Plaintiff pleads civil RICO violations related to Defendants' alleged participation in a fraudulent scheme between 2002 and 2016. (TAC ¶¶ 44, 372-431). It alleges that various "fraudulent machinations and schemes" were committed by Defendants in conjunction with Elant, consisting of: (1) the concealment of the Medicaid enforcement investigation against Elant (*id.* ¶¶ 43-72); (2) the FHA Mortgage Scheme (*id.* ¶¶ 73-79; (3) the concealment or misrepresentation of inter-company transfers (*id.* ¶¶ 80-143); (4) failure to report in audits the sham Fishkill lease causing misleading State Cost Reports to be filed on Plaintiff's behalf (*id.* ¶¶ 144-150); and (5) concealment of the Universal Settlement (*id.* ¶¶ 151-234).

Plaintiff specifically pled that "when McCarthy presented the known facts of the Universal Settlement, together with the fully executed SNF Sale Agreements, that identified the terms of the $10 million purchase price to Ms. McTigue in late December 2014, it became clear to Ms. McTigue for the first time that the Defendants had been intimately involved in the planning and execution of the Elant Leaders' massive fraudulent scheme directed at EverCare and public agencies that arose out of the course of conduct that led to the State Investigation." (*Id.* ¶ 233). In other words, Plaintiff affirmatively alleged that it was on inquiry notice as to its alleged claims against Defendants of financial statement fraud as of December 2014. (*Id.* ¶¶ 233, 234). Specifically, as pled, the December 2014 meeting triggered a duty to investigate Defendants' involvement in the "massive fraudulent scheme . . . that led to the State Investigation" and at least the Universal Settlement and the SNF Sale Agreements. (*Id.* ¶¶ 176-178, 206-232).

Further, Plaintiff made clear it was aware of the injuries it alleges were inflicted by Elant, as set forth in an August 7, 2015 demand letter (*id.*, Ex. 1 ¶ 453),[6] and having known by December 2014 of Defendants' alleged participation in this fraud, Plaintiff had a duty to investigate those storm warnings. "[T]he statute of limitations begins to run, in the case of a [plaintiff] who undertook a reasonable effort of inquiry once 'storm warnings' had been posted, when a reasonable [person] would have discovered the facts necessary to bring a cause of action." *Lorber v. Winston*, 962 F. Supp. 2d 419, 439-40 (E.D.N.Y. 2013).

Plaintiff contends that its allegation that it knew in December 2014 of Defendants' fraud is a "typographical error" (Doc. 70 at 11) and the Court should disregard this allegation as

---

[6] In deciding a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014).

inconsistent with the rest of the Third Amended Complaint. Plaintiff argues that it instead meant to allege that it became aware that the "Elant Entities" rather than "Defendants" were "intimately involved in the Elant Leaders' Massive fraudulent reporting." (Doc. 71 ¶ 5). This alternative reading, however, does not make particular sense, at least when read in its context. (*See, e.g.*, TAC ¶ 227 (describing how the Individual Auditor Defendants revealed at the December 2014 meeting Defendants' participation in the sale of the Elant SNFs)).

Even if the Court were to disregard this allegation that Plaintiff was on inquiry notice as to its alleged claims against Defendants of financial statement fraud as of December 2014 (TAC ¶¶ 233, 234), the statute of limitations would still act as a bar to Plaintiff's RICO claims based on the balance of the pleading. Plaintiff alleges that during 2015, it investigated Elant's conduct, and was fully aware of the extent of the settlement of the Medicaid Fraud investigation against Elant by December 2015. (TAC ¶¶ 63-71, 203-204). By 2016, Plaintiff brought an action against Elant for the conduct complained of herein against Defendants (TAC ¶ 5; *id.*, Ex. 1 at 1 n.1), but does not plead that it conducted an investigation against Defendants in connection with these instances of financial fraud. In other words, the storm warnings arising from the 2015 investigation of Elant's financial misfeasance, in which Plaintiff now claims it knew Defendants were involved, triggered Plaintiff's duty to investigate Defendants.

Plaintiff argues that the limitations period was tolled because Defendants fraudulently concealed their actions. (Doc. 72 at 9-11). To secure such equitable relief, a plaintiff "must show (1) wrongful concealment by defendants, that (2) prevented his discovery of his fraud-based claim within the limitations period, and (3) his own due diligence in pursuing discovery of the claim." *Rosenshein v. Meshel*, 688 F. App'x 60, 64 (2d Cir. 2017). Plaintiff alleges in the Third Amended Complaint that complained-of financial transactions were disclosed in the audited financial

statements and are reflected in either the numbers or note disclosures and were made public when they accompanied the filings with the state regulators and taxing authorities. (*See, e.g.*, TAC ¶¶ 59, 72). Moreover, Plaintiff affirmatively alleges that Defendants, in December 2014, revealed to Ms. McTigue significant concerns regarding the nursing home sale, the omission of having conducted a valuation, the sale of the individual entities for $1, missing assets and liabilities schedules, the incompetence of the Elant Leaders in negotiating the transaction and sales documents, and the omission of consideration regarding the proceeds of the Universal Settlement. (*Id.* ¶¶ 176, 213-234). Because the Court concludes a reasonably diligent person would have discovered fraud-based claims within the limitations period despite the purported "concealment" by Defendants, equitable tolling is not warranted.

Plaintiff also argues that the separate accrual rule applies to save portions of the RICO claims that it did not discover until its reporting systems became sufficiently functional in 2016. (Doc. 72 at 8-9). "Pursuant to this rule, a plaintiff who is continuously injured by an underlying RICO violation may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, No. 16-CV-09576, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019). The allegedly new injuries subject to the separate accrual rule cited by Plaintiff are the Net Worth Deficiency SODs received by Plaintiff beginning in June of 2016 which exposed it to fines, penalties, and other punitive measures; and the impact of these SODs and the underlying "historically inaccurate reporting" which decimated its reimbursement rates for years after 2016. (*Id.*). These injuries are not the product of new and separate RICO violations, but rather are "merely symptoms of [the plaintiff's] pre-existing injuries and, therefore, have no bearing on the limitations analysis." *Rosenshein v. Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017); *see also Lorber v. Winston*, 962 F. Supp. 2d 419, 447-48 (E.D.N.Y. 2013)

15

("Plaintiff alleges one singular scheme—the Winhaven Fraud—which was fraudulent at the outset. In this regard, the Amended Complaint asserts that Winston, Tehrani and Ganz fraudulently gained access to the Credit Line in 2004 in order to defraud the Plaintiff. Thus, any advances that were taken from the Credit Line, including those from after 2008, simply followed from the execution of that scheme.").

Taken as a whole, and based on the allegations in Plaintiff's pleading, the RICO claims against Defendants accrued as early as December 2014—and certainly by December 2015— thereby serving as a time-bar to Plaintiff's claims. Even if, however, the statute of limitations did not bar Plaintiff's RICO claims, they are subject to dismissal on an additional and separate ground argued by Defendants.

### 2.  Failure to State Substantive RICO Claims

"A private cause of action under RICO requires that the plaintiff allege: (1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020) (quoting *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-02259, 2015 WL 374968, at *5 (S.D.N.Y. Jan. 29, 2015)). "To establish the existence of a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Stevenson v. Thornburgh*, No. 23-CV-04458, 2024 WL 645187, at *9 (S.D.N.Y. Feb. 14, 2024), *aff'd*, No. 24-1788, 2026 WL 276584 (2d Cir. Feb. 3, 2026). "Courts generally approach RICO claims with caution, understanding that Congress's goal in enacting the RICO statute was to prevent legitimate businesses from becoming infiltrated by organized crime, although the statute's reach is not limited to mobsters." *Id.* (quoting *One World, LLC v. Onoufriadis*, No. 20-CV-05802, 2021 WL 184400, at *7 (S.D.N.Y. Jan. 19, 2021)).

The first element, the defendant's violation of 18 U.S.C. § 1962, requires a plaintiff to allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Cornetta*, 434 F. Supp. 3d at 179-80 (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).

With respect to the enterprise element, the Supreme Court has explained that a RICO enterprise consists of "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "[T]he enterprise must be engaged in, or the activities of the enterprise must affect, interstate or foreign commerce." *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 173 n.12 (citing 18 U.S.C. § 1962).

Here, the alleged RICO enterprise is the "EverCare Enterprise," an association-in-fact formed by Defendants and the Elant Leaders. (TAC ¶¶ 375-378). Plaintiff pleads that the shared purpose of the EverCare Enterprise was to "acquir[e] and maintain[] eligibility for the FHA Mortgage, so that they could continue to operate an otherwise financially defunct family of not-for-profit entities and maintain their plush jobs." (*Id.* ¶ 378). It contends that the Individual Auditor Defendants conspired with the Elant Leaders, mischaracterized audits, assisted the Elant Leaders in making false representations in loan applications, provided "strategic advice" to Elant regarding the transfers from Plaintiff to Elant and the Elant Entities, assisted the Elant Leaders in transferring

17

losses to Plaintiff's books, and served as the "architect" of the Universal Settlement, concealing the existence of the Universal Settlement. (TAC ¶¶ 55, 59, 74-77, 88-91, 112, 174-175).

"At minimum, where a plaintiff alleges an association-in-fact enterprise, that enterprise must have 'at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Stevenson*, 2024 WL 645187, at *12 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). "To satisfy the first 'purpose' feature, the individuals that [compose] the enterprise 'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *Id.* "[D]istrict courts in this Circuit have held that the common purpose element requires that the enterprise's members have had a common intent to violate RICO or to act unlawfully." *Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). "A separate purpose or objective that does not involve illegal conduct will not do." *Id.* "Individuals or entit[i]es that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law." *Id.*

"To satisfy the second feature, a plaintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme." *Stevenson*, 2024 WL 645187, at *12. "The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." *Black*, 619 F. Supp. 3d at 330. Courts consider several factors in determining whether the structural features of an association-in-fact enterprise has been pled: "(i) whether members of the alleged enterprise have interpersonal relationships"; "(ii) where the members are located, and whether the complaint explains how they came to an agreement to act together or how they knew one another"; "(iii) whether the members are symbiotic—in other words, whether they depend on one another, act to benefit one another, or rely

18

on one other's activities"; and "(iv) whether the alleged predicate acts could be accomplished without the assistance of the other members of the alleged enterprise." *Dynarex Corp. v. Farrah*, No. 18-CV-07072, 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019).

Plaintiff alleges insufficient facts to support a plausible claim that Defendants and the Elant Leaders constituted an association-in-fact enterprise. "Plaintiff has not set forth any allegations, outside of conclusory statements, to support a plausible claim that these persons formed an 'ongoing organization, formal or informal' or any allegations tending to show that 'the various associates [of the alleged enterprise] function as a continuing unit.'" *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 134 (E.D.N.Y. 2010). Plaintiff does not allege any structure or organization, instead merely asserting, in the five paragraphs of this pleading concerning the purported enterprise (TAC ¶¶ 374-378), that Defendants and the Elant Leaders constituted an enterprise. "This allegation is insufficient for a RICO claim." *Id.* (citing *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007) ("The Amended Complaint contains virtually no allegations regarding the structure and organization of the alleged [enterprise], and leaves a plethora of unanswered questions regarding the membership, purpose, and structure of that entity.")). Plaintiff does not "explain how or why the supposed enterprise members worked together" nor does it plead "concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit." *Stevenson*, 2024 WL 645187, at *13 (quoting *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-CV-07801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012)).

Rather, the thrust of the facts in the Third Amended Complaint is that Defendants were retained as, and provided services as, independent auditors, reporting to their clients, attending certain finance committee meetings, and preparing audited financial statements and State Cost

19

Reports. Elant and the Elant Leaders were, for their part, the "mastermind" of the financial misstatements and improper financial schemes. The acts alleged to have been undertaken by Defendants "do not reflect control over the enterprise. At best, they establish assistance to the enterprise." *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 469 (S.D.N.Y. 1996). "[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself." *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) (collecting cases); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("In sum, we hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself."); *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449, 2020 WL 13850728, at *4 (E.D.N.Y. Mar. 31, 2020) ("The only conduct ascribed to [the accountant] was his falsification of tax returns. However, the Amended Complaint asserts that [the accountant] did so at the direction of [the defendant's then-counsel], not as part of his own direction of the enterprise. Consequently, [the accountant's] behavior is more adequately understood as a service that benefits the enterprise, rather than cognizable RICO conduct."); *Tech. in P'ship, Inc. v. Rudin*, No. 10-CV-08076, 2011 WL 4575237, at *5 (S.D.N.Y. Oct. 4, 2011) ("The Complaint alleges that Accountant Defendants filed false information with the IRS and paid Rudin excessive compensation . . . . As alleged, the professional services provided by Accountant Defendants do not demonstrate any control over the enterprise."); *see also Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (applying *Reves* on motion to dismiss, holding that defendant accountants did not control enterprise by attending board meetings,

providing consulting services, helping to computerize internal accounting functions, and performing valuations necessary for asset sales and acquisitions).

Here, Plaintiff's pleading makes clear that while Defendants reported to Plaintiff, they were not decision-makers or in a position of control over Elant or Plaintiff. Defendants' alleged role in Elant's fraud—providing financial advice to the Elant Leaders; knowing (or should have reasonably known) of the Elant Leaders' Medicaid fraud, their defalcation of restricted funds, their diversion of Plaintiff's resources to Elant and the Elant SNFs, and Plaintiff's overpayment for the Fishkill lease; preparing misleading financial statements to help the Elant Leaders in connection with their FHA Mortgage Scheme; participating and presenting at Elant's Finance Committee meetings; assisting in the spin-off of Plaintiff from the Elant Entities; and designing the Universal Settlement—does not constitute participation in the operation and management of the EverCare Enterprise. "[T]he mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000) (emphasis in original); *Redtail Leasing, Inc. v. Bellezza*, No. 95-CV-05191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.").

Nor does Plaintiff allege a shared "common purpose" among the purported members of the EverCare Enterprise. *Id.* at *14. Plaintiff argues in opposition that the Elant Entities were only able to survive due to the Defendants' and Elant Leaders' joint efforts. (Doc. 72 at 13). The Third Amended Complaint, however, alleges the "common purpose" was for Defendants "to enrich themselves and Elant" (TAC ¶ 430) and "personally enrich[ ]" the Individual Auditor Defendants (*id.* ¶ 17). The pleading requirement of a "common purpose" among Defendants and the Elant

Leaders has not been met, as "[Plaintiff's] use of the word 'personally' cuts against the idea that said purpose is 'common.'" *Stevenson*, 2024 WL 645187, at \*14; *see also Grayson v. Combs*, No. 24-CV-09857, 2026 WL 787787, at \*4 (S.D.N.Y. Mar. 20, 2026) ("Plaintiff does not explain why [defendant] would share this purpose, how it enriched itself through this purported enterprise, or what benefit it stood to gain by joining such an association."). Other than those allegations, the pleading is silent as to how Defendants benefited in any way from the alleged enterprise. "Where a plaintiff fails to provide any solid information regarding the hierarchy, organization, and activities of an alleged association in fact and fails to explain each participant's role in the alleged course of fraudulent or illegal conduct, there is no basis to support the conclusion that the individuals were associated together for a common purpose of engaging in a course of conduct." *Grayson*, 2026 WL 787787, at \*5 (quoting *Beter v. Murdoch*, No. 17-CV-10247, 2018 WL 3323162, at \*6 (S.D.N.Y. June 22, 2018), *aff'd*, 771 F. App'x 62 (2d Cir. June 20, 2019)).

Under these circumstances, Plaintiff has not sufficiently pled the existence of a RICO enterprise and its RICO claim therefore fails.[7] Because Plaintiff has not sufficiently pled a RICO violation, its RICO conspiracy claim must likewise be dismissed. *Stevenson*, 2024 WL 645187, at \*22 ("[W]ithout a predicate substantive RICO claim, Plaintiffs' RICO conspiracy claim necessarily fails."). Accordingly, the Sixth and Seventh Claims for Relief alleged in the Third Amended Complaint are dismissed.

---

[7] Defendants also argue that Plaintiff fails to sufficiently plead Defendants' violations of the predicate acts of mail and wire fraud, bank fraud, and money laundering that are alleged in the Third Amended Complaint. The Court need not reach this argument, in light of its conclusion that the existence of an enterprise has not been sufficiently alleged.

B.  The State Law Claims

As a result of the dismissal of the RICO claims, all federal questions have been eliminated. Thus, having dismissed the only claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."); *see also Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-08341, 2024 WL 1312250, at *5 (S.D.N.Y. Mar. 27, 2024) ("Because Plaintiff has not met his burden to establish his RICO claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims."); *Offor v. Mercy Med. Ctr.*, No. 17-CV-01872, 2018 WL 2947971, at *7 (S.D.N.Y. May 31, 2018) ("A federal district court may decline to exercise supplemental jurisdiction over pendent state law claims when it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))). Accordingly, the remaining claims (i.e., the First through Fourth Claims for Relief) are dismissed without prejudice.

III.  Motion to Strike

Defendants move to strike paragraphs 242-256 and Exhibits 9 and 10 from the Third Amended Complaint concerning an engagement distinct from this Plaintiff and any of the entities in which this action is concerned. (Doc. 65). Because the Court has granted Defendants' motion to dismiss, the motion to strike has been rendered moot, and requires no further analysis. *See Modell v. Argonaut Ins. Co.*, No. 23-CV-01488, 2024 WL 495135, at *9 (S.D.N.Y. Feb. 8, 2024).

**CONCLUSION**

For the foregoing reasons, the motion to confirm the arbitration award (Doc. 48) is denied as moot, the motion to dismiss (Doc. 67) is granted, and the motion to strike (Doc. 65) is denied as moot. The Sixth and Seventh Claims for Relief alleged in the Third Amended Complaint are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the balance of the remaining state law claims and as such, they are dismissed without prejudice.

The Clerk of Court is respectfully requested to terminate the pending motions at Doc. 48, Doc. 65, and Doc. 67 and close this case.

SO ORDERED:

Dated: White Plains, New York
        May 11, 2026

_____
Philip M. Halpern
United States District Judge

24